THE HONORABLE JOHN C. COUGHENOUR

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KOSTA INTERNATIONAL,

                    Plaintiff,

          v.

BRICE MANUFACTURING
COMPANY, INC.,

                    Defendant.

CASE NO. C14-0219-JCC

ORDER

This matter comes before the Court on Defendant's motion to dismiss or transfer
(Dkt. No. 11). Having thoroughly considered the parties' briefing and the relevant record,
the Court finds oral argument unnecessary and hereby GRANTS the motion for the
reasons explained herein.

I.     BACKGROUND

Plaintiff Kosta International ("Kosta") filed this breach-of-contract action alleging
that Defendant Brice Manufacturing failed to pay earned commissions. (Dkt. No. 1 at 2–
3.) Defendant manufactures interior products, such as seats, for airplanes. (Dkt. No. 1 at
1–2.) Plaintiff brokers sales between aviation manufacturers like Defendant and airlines.
(Dkt. No. 1 at 1.) Beginning in 2004, Kosta sold Defendant's airplane seats and repair
services to airlines. (Dkt. No. 1 at 3.) The relationship lasted approximately 10 years. The

1    Complaint identifies four deals that Kosta brokered and for which it alleges it is owed

2    commissions, one involving Firefly Airlines, two involving Malaysia Airlines, and one

3    involving Vietnam Airlines. (Dkt. No. 1 at 6.) Over the course of these deals, Simon

4    Kuang, a Senior Vice President at Kosta, twice traveled to Washington for Seat Technical

5    Coordination meetings. (Dkt. No. 18 ¶¶ 5, 8.) Defendant's representatives attended at

6    least one of these meetings, along with representatives from Malaysia Airlines and

7    Boeing. (Dkt. 18, Ex. A.) On one of the trips, Mr. Kuang also met with unspecified

8    "TIMCO representatives" at an office in Kent, Washington. (Dkt. No. 18 ¶ 8.)

9           Plaintiff is an Australian partnership with its headquarters in Melbourne,

10   Australia. (Dkt. No. 1 at 1.) Defendant is incorporated in California. (Dkt. No. 15 ¶ 5.) Its

11   primary place of business is Pacoima, California, and its corporate officers reside in

12   Greensboro, North Carolina. (Dkt. No. 15 ¶ 5.) Defendant is a subsidiary of TIMCO

13   Aviation Services, Inc., which is also headquartered in Greensboro. (*Id.*) A California

14   filing authorizes Defendant to do business as "TIMCO Aerosystems" in California. (*Id.* ¶

15   8.) A separate corporate entity, TIMCO Aerosystems, LLC, is certified to do business in

16   Washington and has an office in Kent, Washington. (Dkt. No. 20, Ex. 1 ¶ 4.)

17          Richard Salanatri is the President of Brice Manufacturing (Dkt. No. 15 ¶ 1) and is

18   also the President of TIMCO Aerosystems, LLC (Dkt. No. 19, Ex. H). The domain name,

19   bricemfg.com, publishes content identical to that of www.timco.aero. (Dkt. No. 19, Exs.

20   C, G.) This content includes a "TIMCO Aerosystems Contact" page that refers to a

21   "Satellite Office" in Seattle. (*Id.*)

22          Defendant has moved to dismiss on the basis that this Court lacks personal

23   jurisdiction over Defendant and that venue is improper. (Dkt. No. 11.)

24   **II.    DISCUSSION**

25          **A.    Personal Jurisdiction**

26          Washington's long-arm statute permits the exercise of jurisdiction to the full

ORDER

1   extent of the Constitution's Due Process clause. *See* Wash. Rev. Code § 4.28.185; *Shute*

2   *v. Carnival Cruise Linds*, 783 P.2d 78, 79–80 (1989), *rev'd on other grounds Carnival*

3   *Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991). "Under the due process analysis, a

4   defendant may be subject to either general or specific personal jurisdiction." *Easter v.*

5   *American West Fin.*, 381 F.3d 948, 960 (9th Cir. 2004) (citing *Helicopteros Nacionales*

6   *de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 & n.9 (1984)). Plaintiff bears the burden of

7   establishing personal jurisdiction, *Doe v. Unocal*, 248 F.3d 915, 922 (9th Cir. 2001), but

8   need only make a prima facie showing of the jurisdictional facts, *see Myers v. Bennett*

9   *Law Offices*, 238 F.3d 1068, 1071 (9th Cir. 2001). Conflicts in affidavits are resolved in

10  the plaintiff's favor for purposes of deciding whether the plaintiff has established

11  personal jurisdiction. *Doe*, 248 F.3d at 922 (citing *AT&T v. Compagnie Bruxelles*

12  *Lambert*, 94 F.3d 586, 588 (9th Cir. 1996)).

13      **B.      General Jurisdiction**

14      General jurisdiction is available "[i]f the defendant's activities in the forum are

15  substantial, continuous and systematic." *Doe*, 248 F.3d at 923. General jurisdiction "is an

16  exacting standard . . . because a finding of general jurisdiction permits a defendant to be

17  haled into court in the forum state to answer for any of its activities anywhere in the

18  world." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004).

19      Plaintiff contends that general jurisdiction is available because Defendant

20  maintained an office in Washington and held itself out as having operations in

21  Washington. (Dkt. No. 17 at 13.) Defendant argues that Plaintiff's evidence relates

22  almost solely to TIMCO Aerosystems, LLC, and that Defendant cannot be sued in

23  Washington on the basis of websites. (Dkt. No. 20 at 3–4.)

24      The Court agrees with Defendant that Kosta has failed to establish sufficient

25  contacts to demonstrate that this Court has general jurisdiction over Defendant. Kosta

26  relies largely on web-based information. For example, Kosta contends, "TIMCO did and

1    continues to advertise its presence in Washington and hold itself out as having operations

2    in Washington." (Dkt. No. 17 at 13.) It supports this proposition, however, with the first

3    two pages of a Google search for "Brice Manufacturing Company." (Dkt. No. 17 at 13 n.

4    49; Dkt. No. 19 ¶ 5, Ex. B.) Even if a company's Google results sufficed to establish its

5    presence in a state—a peculiar result—the vast majority of the cited links merely suggest

6    that Brice Manufacturing is a California company having some affiliation with TIMCO

7    Aviation Services. (Dkt. No. 19, Ex. B.) Similarly insufficient is the fact that Defendant's

8    employee's business card contains a web address, www.timcoaerosystems.com, which

9    points to contact information for a "TIMCO Aerosystems" satellite office in Seattle,

10   Washington. (Dtk. Nol 18, Ex. D; Dkt. No. 19, Ex. A.)

11       These are not "the kind of continuous and systematic general business contacts

12   that 'approximate physical presence.'" *Glencore Grain Rotterdam B.V. v. Shivnath Rai*

13   *Harnarain Co.*, 284 F.3d 1114, 1124 (9th Cir. 2002) (citing *Bancroft & Masters, Inc. v.*

14   *Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2002)). Even recognizing the existence

15   of a shared corporate officer (Dkt. No. 17 at 5), Plaintiff's evidence at most suggests

16   some relationship between two separate corporate entities, only one of which is a

17   defendant in this action. *See McMahon v. Televents, Inc.*, 129 F.3d 126, 1997 WL 678358

18   (9th Cir., Oct. 29, 1997) (unpublished) (evidence related to a non-party did not disprove

19   relevant facts). General jurisdiction cannot be established merely on the basis of websites

20   when the website appears "more like a national advertisement or toll-free reservation

21   hotline." *See Black v. The Ritz-Carlton Hotel Co., LLC*, 977 F.Supp.2d 996 at *8 (C.D.

22   Cal, Oct. 10, 2013) (concluding that a subsidiary's control over a website which

23   established a connection with another subsidiary would not establish general

24   jurisdiction). (Dkt. No. 17 at 5.)

25       The Court may order discovery on the jurisdictional issues, *see Doe*, 248 F.3d at

26   922, and Plaintiff briefly suggests that discovery could be appropriate "to unravel the

1  complex TIMCO organizational structure of entities." (Dkt. No. 17 at 13.) But where the

2  evidence of "continuous and systematic" contacts falls so short of the "exacting standard"

3  required to establish general jurisdiction, the Court declines to require discovery.

4  *Schwarzenegger*, 374 F.3d at 801 (recognizing that "a finding of general jurisdiction

5  permits a defendant to be haled into court in the forum state to answer for any of its

6  activities anywhere in the world").

7          **C.**        **Specific Jurisdiction**

8          "A court may exercise specific jurisdiction over a foreign defendant if his or her

9  less substantial contacts with the forum give rise to the cause of action before the court."

10  *Doe*, 248 F.3d at 923. A three-part test governs the specific-jurisdiction analysis. *Myers*,

11  238 F.3d at 1072. First, "[t]he non-resident must purposefully direct his activities or

12  consummate some transaction with the forum . . . or perform some act by which he

13  purposefully avails himself of the privilege of conducting activities in the forum, thereby

14  invoking the benefits and protections of its laws." *Schwarzenegger*, 374 F.3d at 802

15  (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). Second, "the claim must be

16  one which arises out of or relates to the defendant's forum-related activities." *Id.* Finally,

17  the exercise of jurisdiction must be reasonable. *Id.* The plaintiff bears the burden of

18  satisfying the first two prongs. *Id.* If successful, the burden then shifts to the defendant to

19  show that the exercise of jurisdiction would be unreasonable. *Id.*

20          **1. Purposefully avails**

21          "[I]n contract cases, we typically inquire whether a defendant 'purposefully avails

22  itself of the privilege of conducting activities' or 'consummates a transaction' in the

23  forum, focusing on activities such as delivering goods or executing a contract." *Menken*

24  *v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007) (citing *Schwarzenegger*, 374 F.3d at 802).

25  As the Supreme Court has explained:

26          [W]e have emphasized the need for a 'highly realistic' approach that recognizes

that a 'contract' is 'ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction.' [] It is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts with the forum.

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985) (citation omitted).

To establish purposeful availment, Kosta points to evidence of meetings in Washington. Mr. Kuang attended two "Seat Technical Coordination meetings" in Seattle during the Malaysia Airlines deals. (Dkt. No. 18 ¶¶ 5, 8.) One of these meetings included representatives from Malaysia Airlines, Defendant Brice, Amsafe, Panasonic, and Boeing. (Dkt. No. 18, Ex. A.) Mr. Kuang's second trip to Seattle was in the course of a week-long trip to the United States during which he also visited Greensboro, North Carolina. (Dkt. No. 18, Ex. B.) There are no details about this meeting, merely a receipt showing that he flew to Seattle. (*Id.*) Finally, during the course of the Vietnam Airlines Deal, Mr. Kuang states that he "was working with Mr. Luedeke to coordinate details of 'TIMCO Seattle' hosting Vietnam Airlines delegates at 'our Seattle office.'" (Dkt. No. 18 ¶ 9.) The Court notes that the email submitted in support of this statement suggests that Mr. Kuang was the individual who used the quoted language. (Dkt. No. 18, Ex. C.) There is no suggestion that the meeting actually took place.

These contacts do not establish that Defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Schwarzenegger* , 374 F.3d 797 at 802 (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Over many years of the relationship and four different contracts, Plaintiff can point to only two meetings that actually took place in Washington, and the location appears to have been dictated by the needs of Malaysia Airlines and Boeing, not Defendant. This "actual course of dealing" does not establish that "the defendant purposefully established minimum contacts with the forum." *Burger*

1   *King*, 471 U.S. at 479. Instead, exercising personal jurisdiction over Defendant on the

2   basis of these contacts would be requiring it to appear in Washington as a result of the

3   activities of a third party—fortuitous contacts that are incidental to where the seats were

4   installed, not any purposeful activity on the part of Defendant. *See Brand v. Menlove*

5   *Dodge*, 796 F.2d 1070, 1074 (9th Cir. 1986) (purposeful-availment requirement ensures

6   that jurisdiction does not obtain "as the result of random, fortuitous, or attenuated

7   contacts or on account of the unilateral activity of third parties.").

8        **2.  Forum-related conduct**

9        Neither does the Court believe that Plaintiff has demonstrated that it would not

10  have suffered an injury "but for" the defendant's forum-related conduct. *See Myers v.*

11  *Bennett Law Offices*, 238 F.3d 1068, 1075 (9th Cir. 2001). Plaintiff has submitted an

12  affidavit from Mr. Kuang, who states: "Without the parties' actions in Washington, it is

13  unlikely that the Kosta Deals would have been closed." (Dkt. No. 18 ¶ 12.) He also states:

14  "Kosta did not receive payment for the products brokered until after the products were

15  shipped to the client from Washington." (Dkt. No. 18 ¶ 7.) Taking these statements as

16  true, they establish no but-for connection between the Washington activities and the

17  alleged contractual breaches. The contracts giving rise to this dispute involved a

18  California corporation and an Australian corporation and required performance around

19  the world. *See Glencore Grain*, 284 F.3d 1114, 1123–24 (9th Cir. 2002) (claim did not

20  arise out of conduct when contracts were negotiated abroad, involved foreign companies,

21  and required performance in foreign country). There is little explanation about the subject

22  of the Washington meetings and no suggestion at all about what role, if any, Defendant

23  played during the second meeting. The Washington location of these meetings appears to

24  have been dictated by the needs of Malaysia Airlines and Boeing, not Defendant's

25  activity. Vaguely alleging that these meetings were "likely" necessary to close the

26  contracts does not establish that Defendant's intentional contact with Washington led to

1  Plaintiff's injury. *See Menken*, 503 F.3d at 1058 ("A single forum state contact can

2  support jurisdiction if the cause of action arises out of that particular purposeful contact

3  of the defendant with the forum state."). Indeed, as Defendant points out, the 2009

4  Washington meeting on June 9–10 occurred after Malaysia Airlines had already agreed to

5  purchase the aircraft seats on June 6, 2009. (Dkt. No. 18, Ex. A; Dkt. No. 20, Ex. A.) *See*

6  *Doe*, 248 F.3d at 925 (where negotiations were not necessary to project's initiation, there

7  was no evidence that the negotiations were a but-for cause of the plaintiff's claims).

8  Plaintiff has therefore failed to establish a but-for relationship between the forum contacts

9  and Plaintiff's claims.

10       Having concluded that Plaintiff has not met its burden to establish purposeful

11  availment or but-for causation, this Court need not reach the reasonableness prong of the

12  specific-jurisdiction test. *See Doe*, 248 F.3d at 925. Neither does the Court need to reach

13  Plaintiff's arguments related to venue and transferring.

14  **III.    CONCLUSION**

15       For the foregoing reasons, Defendant's motion to dismiss (Dkt. No. 11) is

16  GRANTED and this matter is dismissed for lack of personal jurisdiction.

17       DATED this 5th day of August 2014.

18

19

20

21

22

23

24       John C. Coughenour
         UNITED STATES DISTRICT
25       JUDGE

26

ORDER
PAGE - 8